```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

                    CASE NO. 08-60323 CIV-ZLOCH
```

JEROME TESLER,

        Plaintiff,

vs.                                               **O R D E R**

COSTA CROCIERE, S.p.A.,

        Defendant.

_____/

THIS MATTER is before the Court upon Plaintiff's Complaint (DE 1) filed herein. A two day bench trial was held commencing March 9, 2009. The Court has carefully reviewed the entire court file herein and is otherwise fully advised in the premises.

## I. Findings of Fact

Pursuant to Federal Rule of Civil Procedure 52, after a full presentation of the evidence at trial by both sides, including the live testimony, physical evidence, the videotaped depositions viewed in Chambers after trial, and all reasonable inferences drawn therefrom, the Court finds the following facts by a preponderance of the evidence:

A.

1. Plaintiff Jerome Tesler is a resident of the great Commonwealth of Pennsylvania.

2. Defendant Costa Crociere, S.p.A. is an Italian corporation headquartered in Genoa, Italy and operates cruises in

the Caribbean and Mediterranean Seas.

3. At all relevant times, Defendant was the owner and/or operator of the cruise ship Costa Magica.

4. Plaintiff and his wife Haze Varner Tesler were fare paying passengers aboard the Costa Magica on its Mexican Magic cruise from March 25, 2007, through April 1, 2007.

5. The Mexican Magic cruise departed from Port Everglades, Florida and had ports of call in Cozumel, Mexico; Grand Cayman, Cayman Islands; Ocho Rios, Jamaica; and Grand Turk Island, Turks and Caicos Islands.

6. The Teslers occupied cabin # 7294, a "VIP suite" that had a wood-like floor in the entrance area that cannot be seen from the bedroom and bathroom area.

7. The front door to cabin # 7294 had an automatic closing mechanism that prevented the door from staying open unless it was held open by a person or by, for example, a rubber door stop.

8. Fe Trinidad, the cabin stewardess assigned to cabin # 7294, cleaned the Teslers' cabin without incident for the first four days of the cruise.

9. Ms. Trinidad cleaned each cabin, including # 7294, twice each day.

10. Defendant's housekeeping policy permits a cabin to be cleaned while the passenger is inside if the passenger permits it.

11. On March 30, 2007, the fifth day of the cruise, the Costa Magica was sailing in navigable waters between Ocho Rios and Grand Turk Island.

12. That day, Plaintiff was alone in his cabin, his wife having left a short time prior, and Ms. Trinidad knocked on the door for the morning housekeeping and cleaning.

13. Plaintiff answered the door and told Ms. Trinidad to wait and that he would be out of the cabin as soon as he grabbed his shoes, glasses, and book.

14. Plaintiff and Ms. Trinidad failed to understand each other on this point. Plaintiff intended to make Ms. Trinidad delay her cleaning until he had left the room. Ms. Trinidad understood Plaintiff to mean that he would be out of her way momentarily but she may begin cleaning at that time.

15. Plaintiff then went back into the cabin bedroom area to use the bathroom, put on his shoes, and collect his glasses and book.

16. While Plaintiff was in the bedroom and bathroom area, Ms. Trinidad water mopped the wood-like floor of the entrance area.

17. After the entranceway was mopped, Plaintiff walked from the bedroom area toward the door. As he took his first step onto the wood-like floor just mopped, he slipped and fell, landing on his left knee and the front of his body. His clothes were wet from

the fall.

18. At the time of the fall, Ms. Trinidad was outside the cabin, in the hallway.

19. Ms. Trinidad heard the Plaintiff calling out in pain after he fell and ran into the room.

20. She called for assistance, and other employees soon arrived with a wheelchair.

21. Plaintiff was taken to the Costa Magica's medical facility for treatment. Without the help of X-ray technology, medical personnel diagnosed a fractured patella (kneecap) and arranged for emergency medical care to be provided on Grand Turk Island.

22. Plaintiff was given one or more injections of morphine for the pain.

23. When the ship first docked at Grand Turk Island, Plaintiff was immediately taken off in his wheelchair and placed in an ambulance waiting at the dock.

24. The ambulance took Plaintiff to a hospital on Grand Turk Island, where X-rays confirmed a fractured patella.

25. He was told surgery would be necessary but did not need to be done right away. He elected to have his leg immobilized with a cast and have the surgery upon his return to Pennsylvania.

26. He returned to the Costa Magica later on the afternoon of

March 30, 2007, and remained in bed for the remaining day and a half of the cruise.

27. On April 1, 2007, a car took him to the airport as soon as he disembarked at Port Everglades, and he flew to Newark.  From there, a limousine arranged by his insurance company drove him directly to the Pocono Medical Center emergency room.

28.  On April 2, 2007, he met with Dr. Gregory Menio, an orthopedic surgeon.  Surgery was scheduled for April 4, 2007.

29.  Dr. Menio performed a two-part surgery on Plaintiff's left knee: an arthroscopic phase and an open surgery phase.

30.  By these two surgical procedures Dr. Menio was able to remove the small portions of Plaintiff's left patella that were fractured off the remaining part and fix associated tears within the left knee joint.  Defendant's expert Dr. Paul Meli affirmed that Dr. Menio did an excellent job on Plaintiff's left knee.

31.  Dr.  Menio  prescribed  and  Plaintiff  continued  with treatment via physical therapy.  The therapy, provided at a local rehabilitation facility, was prescribed through August of 2007.

32.  Dr. Menio recommended that Plaintiff continue to stay active with his knee, but did not prescribe continued physical therapy after August of 2007.  Since that time, Plaintiff continues to go to the same rehabilitation facility to work out and pays the cost out of pocket.  He does not focus exclusively on his knee;

rather, he uses the facility for his knee and to stay in shape and mobile, just as he would at a conventional gym.

33. Sometime in mid-2007, Plaintiff's wife threw away the boat shoes he was wearing when he fell aboard the Costa Magica. The shoes were not lost, but intentionally thrown away as part of Mrs. Tesler's yearly chore of ridding the closets of items that are too old to keep. A fair inference is that on the day he fell the boat shoes Plaintiff had on were nearly worn through.

B.

34. Prior to the fall aboard the Costa Magica on March 30, 2007, Plaintiff had fallen five times since April of 1996.

35. In April of 1996, Plaintiff fell and cracked his rib.

36. In December of 1999, Plaintiff tripped and fell on a curb at an airport and fractured his wrist and several ribs.

37. In January of 2000, Plaintiff fell and tore his rotator cuff and fractured a rib and bones in his hand.

38. In February of 2004, Plaintiff fell and injured his shoulder.

39. In March of 2005, Plaintiff was walking on his driveway and slipped on some ice, injuring his ankle.

40. In November of 1996, Plaintiff experienced lightheadedness and slipped a little going down the stairs.

41. In 2003, Plaintiff injured his medial meniscus in his

left knee while playing softball.

 42. In 2006, Plaintiff experienced knee pain while using stairs.

C.

 43. Plaintiff suffered a great deal of pain when he fell and broke his patella aboard the Costa Magica.  He continued to experience pain throughout his recovery.  He will experience some amount of pain as a result of the knee injuries in the future.

 43. As of December of 2008, Plaintiff has attained his maximum medical improvement and is left with an overall bodily impairment of 6%.

 44. Prior to this knee injury, Plaintiff's range of motion in both knees was 0° extension and 120° flexion.  As a result of this injury, the range of motion in his left knee measures 0° extension and 117° flexion, an insignificant change.

 45. As a result of injuring his left knee, he is unable to play golf, an activity he greatly enjoyed with his adult son, stepson, and grandson.

 46. The pain in his left knee when going up steps is somewhat increased since his fall aboard the Costa Magica.

 47. He can no longer climb or descend at all certain stairways if they are too steep, as at some baseball parks.

 48. Plaintiff is currently 80 years old and has a reasonable

life expectancy of approximately 7.7 years.

49.  Plaintiff's medical expenses incurred as a result of this injury totaled $10,815.30 and were paid pursuant to an insurance policy provided through Medicare and a supplemental insurance program provided through United Healthcare.  Medicare and United Healthcare have a lien on all damages Plaintiff collects in this action in the amount of $10,815.30.

50.  Dr. Menio prescribed physical therapy for Plaintiff's knee, which was covered by his insurance.  After the term of prescribed physical therapy expired, his insurance ended coverage for workouts at the rehabilitation facility he went to.  Plaintiff voluntarily assumed the cost of continuing workouts at the rehabilitation facility, following Dr. Menio's advice that staying active would be a benefit.  Because Plaintiff voluntarily chose this particular method to follow Dr. Menio's advice that he remain active, the cost of the rehabilitation facility after the period of prescribed therapy is not properly calculated as an element of damages.

## II. Conclusions of Law

51.  The Court has jurisdiction over the Parties hereto and the subject matter herein pursuant to its admiralty and maritime jurisdiction granted by 28 U.S.C. § 1333.

52.  This action is governed by general maritime law.

53. A cruise ship operator is liable for another person's damages in an action for negligence when it has a duty of care toward that person, it breaches that duty of care, that person incurs damages, and the cruise ship operator is the actual and proximate cause of the damages.

54. Comparative fault applies to negligence actions in admiralty. Thus, a cruise ship operator's liability is reduced by the percentage an injured person shares fault for causing his own injuries.

55. Defendant is legally responsible for any negligent act of Ms. Trinidad in the cleaning of cabin # 7294 during the Mexican Magic cruise from March 25, 2007, through April 1, 2007.

56. At all times material to this case, Defendant owed Plaintiff a duty of reasonable care under the circumstances.

57. On March 30, 2007, Defendant breached its duty of reasonable care for the safety of the Plaintiff by failing to exercise reasonable care in the cleaning of cabin # 7294, namely by failing to wait until Plaintiff departed cabin # 7294 prior to water mopping the wood-like floor area in the entrance way, or by failing to warn Plaintiff that the wood-like floor area was wet from being mopped either orally or by placing a "wet floor" or "cleaning in progress" sign on or about the wood-like floor area during and after it was water mopped.

58. Defendant's breach of its duty is an actual and proximate cause of Plaintiff's injuries and other damages enumerated in Section I.C of this Order.

59. At all times material to this case, Plaintiff had a duty to exercise reasonable care under the circumstances for his own safety.

60. On March 30, 2007, Plaintiff failed to exercise reasonable care under the circumstances for his own safety by failing to observe that the door to cabin # 7294 had been propped open by Ms. Trinidad, by failing to observe that the wood-like floor area was wet from being mopped, by walking hurriedly onto the wood-like floor area without a reasonable belief that it was not wet, and by wearing shoes that lacked sufficient traction.

61. Plaintiff's failure to exercise reasonable care under the circumstances for his own safety is an actual and proximate cause of the injuries and other damages enumerated in Section I.C of this Order.

61. The Court finds as a matter of law that for the incident aboard the Costa Magica on March 30, 2007, Plaintiff is 35% at fault and Defendant is 65% at fault.

62. The amount of money that will fairly and adequately compensate Plaintiff for the reasonable and necessary expenses of hospitalization, medical care, and treatment obtained by him in the

past as a result of this incident is $10,815.30.

63. The amount of money that will fairly and adequately compensate Plaintiff for the reasonable and necessary expenses of hospitalization, medical care, and treatment to be obtained by him in the future is $0.00.

64. The amount of money that will fairly and adequately compensate Plaintiff for his bodily injury, pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life experienced in the past is $100,000.00.

65. The amount of money that will fairly and adequately compensate Plaintiff for his bodily injury, pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life to be experienced in the future is $20,000.00.

66. Thus, Plaintiff's total damages incurred as a result of the fall aboard the Costa Magica on March 30, 2007, are $130,815.30.

67. This amount must be reduced by 35% based on Plaintiff's comparative fault.

68. Plaintiff is entitled to recover $85,029.95.

69. As this action is governed by maritime law, pre-judgment interest will be awarded. Sunderland Marine Mut. Ins. Co., Ltd. v.

Weeks Marine Const. Co., 338 F.3d 1276, 1280 (11th Cir. 2003) (citing Ins. Co. of N. Am. v. M/V Ocean Lynx, 901 F.2d 934, 942 (11th Cir. 1990)).

70. The portion of the $85,029.95 award that bears prejudgment interest is $72,029.95.

71. Plaintiff fell and was injured on March 30, 2007. Therefore, pre-judgment interest will be assessed against the principal sum of $72,029.95 for the period running March 30 through December 31, 2007, the whole of year 2008, and this year to the date of this Order at a rate of 6.04%,[1] compounded annually, for a total award of past damages of $82,696.11.

72. Plaintiff's past damages with prejudgment interest thereon must be added to the portion of his award representing future damages, which is $13,000.00 (65% of $20,000.00).

73. Therefore, Plaintiff shall recover a total award of $95.696.11 in damages.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. The Court has jurisdiction over the Parties hereto and the subject matter herein;

---

[1] This is the average prime rate for the period at issue. See http://www.federalreserve.gov/releases/H15/data/Monthly/H15_PRIME_NA.txt.

12

2. The Court finds in favor of Plaintiff Jerome Tesler and against Defendant Costa Crociere, S.p.A.; and

3. Final Judgment will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this    7th    day of May, 2009.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record